**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NANETTE GEISER,** | : | **Civil No.  1:19-CV-1935** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **ANDREW SAUL,** | : | |
| **Commissioner of Social** | : | |
| **Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

Social Security Administrative Law Judges ("ALJs") are required to make a series of legal, medical, and factual judgments in the course of adjudicating disability claims. They perform this task against the backdrop of a five-step sequential analytical paradigm. Once the ALJ completes this task, it falls to the court to review these disability determinations. In evaluating Social Security appeals, we are enjoined to apply a deferential standard of review, which calls upon us simply to determine whether substantial evidence, a quantum of proof that is less than a preponderance but more than a scintilla of evidence, supports the ALJ's findings. The Supreme Court has recently underscored for us the limited scope of our review when considering Social Security appeals, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

This rule applies with particular force to disability claims based, in part, upon medical complications resulting from obesity. In this setting the court of appeals has held that where an ALJ defines a claimant's obesity as a severe impairment at Step 2 of this analysis, there is a basic duty of articulation that is owed the claimant, explaining how that obesity affects the issue of disability. However, once that duty of articulation is met, the substantive standard of review remains highly deferential. Diaz v. Comm'r of Soc. Sec., 577 F.3d 500 (3d Cir. 2009).

The instant case presents a single focused claim which implicates these legal principles. The plaintiff argues that the ALJ has failed to meaningfully analyze the extent to which her obesity impaired her ability to perform light work. While we

regard this as a close case, given the deferential standard of review that applies to Social Security appeals, which calls upon us simply to determine whether substantial evidence supports the ALJ's findings, we conclude that substantial evidence exists in this case which justified the ALJ's decision that led to the denial of this particular claim. We also conclude that the ALJ's decision, read as a whole, did provide a meaningful assessment of Geiser's obesity. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner in this case.

## II.    **Statement of Facts and of the Case**

On March 2, 2017, Nanette Geiser applied for disability benefits pursuant to Title II of the Social Security Act. (Tr. 15). In this application, Geiser alleged that she had become disabled beginning in November of 2014, (Tr. 13), as a result of the combined effects of obesity, degenerative disc disease, and diabetes. (Tr. 17). Geiser was 52 years old at the date of onset of her alleged disability. (Tr. 35). She had attended high school and junior college, and had prior employment as a cleaner, line cook, cashier, and home health aide. (Tr. 163, 172). Geiser's date last insured for Social Security purposes was March 31, 2016. (Tr. 17).

During this period from November 2014 through March of 2016, medical records reveal that Geiser underwent a lumbar spinal fusion procedure in December 2014. (Tr. 580-88). Subsequent examination and treatment records for Geiser also consistently documented that she was obese. Indeed, Geiser's height was described

at various times as ranging between 5 foot 3 inches and 5 foot 5 inches; her weight, in turn, fluctuated between 240 and 285 pounds.[1]

Yet, while these medical records consistently confirmed Geiser's obesity, they indicated that she had some capacity to perform physical activity. For example, in February of 2015, she was seen for a medical recheck. (Tr. 494). At that time, she presented with no general complaints of weakness or fatigue, although she described some pain, stiffness, and reduced range of motion due to her lumbar surgery. (Id.) It was noted that Geiser was obese, but she had full (5/5) strength in all muscle groups and displayed a normal gait. (Tr. 495).

One month later, in March of 2015, at a medical recheck, Geiser reported that she was participating in physical therapy, and presented with no general complaints of weakness or fatigue beyond pain, stiffness, and reduced range of motion due to her lumbar surgery. (Tr. 491). Once again, Geiser had a normal gait, no abnormal movements, and a normal alignment. (Tr. 492). These essentially unremarkable physical findings continued in April of 2015, when Geiser's sensation and motor functioning were described as grossly normal at a gastroenterology appointment. (Tr. 281, 285).

---

[1] (Tr. 35, 53, 162, 223, 239, 249, 269, 277-78, 281, 285, 352, 357, 359, 362, 365, 383, 389, 417, 420, 423, 427, 430, 433, 436, 439, 442, 448, 451, 454, 457, 461, 464, 467, 469, 473, 476, 479, 482, 488-490, 491, 493-94, 497-498, 500-501, 552, 563, 574, 631, 635, 735, 845, 858, 861, 864, 868, 872, 875, 878, 882, 886, 890, 1052, 1058, 1062-63, 1070, 1075, 1098, 1103).

Throughout the summer and fall of 2015, medical staff continued to document both Geiser's obesity and her physical capabilities. For example, in July 2015, Geiser reported participating in physical therapy two to three times per week, therapy which she stated was helping her overall condition. (Tr. 486). Likewise, in August of 2015 Geiser was described as "very strong", but obese. (Tr. 482-83). Throughout July, August, and September 2015, medical records consistently indicated that Geiser had full muscle strength and a normal gait. (Tr. 480, 482-83, 897).

In October 2015, Geiser exhibited some medical complications in that she was in an orthopedic walking boot and limping slightly after hitting her pinky toe on a bedpost, but examination notes stated that she possessed full muscle strength in all groups and normal gait. (Tr. 476-77). One month later, in November of 2015, Geiser reported that her chronic pain, while stable, limited her ability to exercise, but that it was "tolerable for the most part with the meds." (Tr. 472). She was still wearing the walking boot, reported having lost 5 pounds with diet, was motivated to continue losing weight, and had an antalgic gait due to the walking boot on her left foot, but, upon examination, she had full range of motion and full strength in all muscle groups despite some tenderness to her lumbar spine and bilateral knees. (Tr. 472-74).

Geiser's medical records in early 2016 provided similar reports regarding Geiser's impairments, limitations, and capabilities, but also documented that Geiser

had returned to the workforce, albeit in a limited capacity. In February 2016, it was reported that Geiser had an antalgic gait from wearing the walking boot on her left foot, but she had full range of motion and full strength in all muscle groups despite some tenderness to her lumbar spine and bilateral knees. (Tr. 469-70). In March 2016, during one of the last examinations of Geiser prior to her date last insured, she reported employment cleaning "for a couple businesses in State College." (Tr. 466). Her range of motion was "okay" and she had a normal gait. (Tr. 467). Later, in March of 2016, Geiser stated that she had returned to work two months ago but had experienced some right knee pain. (Tr. 463). Her BMI was noted to be 42.03, and while she exhibited some joint tenderness in the lumbar spine and right knee, her range of motion was "okay" and she had a normal gait. (Tr. 464).

Thus, during the period encompassed by this disability claim, Geiser undeniably suffered from obesity and other related medical impairments. Nonetheless, she also displayed strength and reported that she was able to undergo physical therapy and perform some cleaning work. It was against the backdrop of this mixed clinical history which documented both Geiser's impairments and her capabilities, that a state agency expert, Dr. Robert Weisberg, opined in July of 2017

that Geiser retained the residual functional capacity to perform a range of light work. (Tr. 58-61).[2]

The ALJ conducted a hearing into Geiser's disability application on August 27, 2018. (Tr. 29-51). Geiser and a Vocational Expert both appeared and testified at this hearing, (id.), and in her testimony Geiser once again confirmed that she suffered from obesity and had experienced fluctuating weights over the past several years. (Tr. 35). Geiser reportedly weighed 250 pounds at the time of this hearing. (Id.)

Following this hearing, on November 19, 2018, the ALJ issued a decision denying Geiser's application for disability benefits. (Tr. 12-24). In this decision, the ALJ first found that Geiser last met the insured requirements of the Social Security Act on March 31, 2016. (Tr. 16). At Step 2 of the five-step sequential analysis process that applies to Social Security disability claims, the ALJ found that Geiser's obesity, diabetes and degenerative disc disease were all severe impairments. (Id.) The ALJ also found that none of Geiser's impairments met the criteria of a Social Security listing which would have prescribed her as *per se* disabled. (Tr. 17-19).

The ALJ then concluded that Geiser:

[H]ad the residual functional capacity to perform light work as defined in 20 CFR 40-1567(b) except she could no more than frequently push

---

[2] The only countervailing medical opinion evidence was a January 2017 opinion of an orthopedic provider, Dr. DiSimone, whose opinion was formulated after Geiser's date last insured, and who had only begun treating Geiser after her date last insured. This opinion was given little weight by the ALJ, (Tr. 22), and on appeal, Geiser does not challenge the ALJ's decision weighing this medical opinion evidence.

or pull with her bilateral lower extremities. In addition, she could frequently use ramps or stairs, balance, kneel, and crouch but only occasionally use ladders, ropes, or scaffolds, stoop, and crawl. The claimant had to avoid concentrated exposure to extreme cold, wetness, and vibration. She had to avoid even moderate exposure to hazards such as dangerous machinery and unprotected heights.

(Tr. 20).

Having made these findings, the ALJ determined at Step 4 of this sequential analysis that Geiser could return to her past employment as a cashier, (Tr. 22-23), and further found at Step 5 that she retained the ability to perform other light work in the national economy. (Tr. 23-24). Accordingly, the ALJ concluded that Geiser had not met the exacting standards of disability prescribed by law and denied her claim for these disability benefits. (Tr. 24).

The ALJ's decision expressly considered Geiser's obesity at several stages of this analysis. At the outset, the ALJ found that this obesity was a severe impairment for Geiser at Step 2 of this analysis. (Tr. 17).

The ALJ then took this condition into account as part of the Step 3 listing analysis in this case, explaining that:

Pursuant to SSR 02-1 p, the undersigned has considered obesity as an aggravating factor to any other severe impairment, that in combination would meet a listing. Additionally, there is no longer any specific listing of impairment for diabetes mellitus but it is evaluated under section 9.00(8)(5), endocrine disorders. The undersigned notes that this condition has not caused the claimant end [sic] organ damage such as amputation, retinopathy, coronary artery disease, peripheral vascular disease, gastroparesis, nephropathy, skin infections, or problems with cognition. Therefore, the undersigned has considered diabetes mellitus

as an aggravating factor to any other severe impairment, which in combination would meet a listing. However, the medical evidence of record does not indicate that the claimant's obesity or diabetes mellitus contributed to any other severe impairment that caused that impairment to meet a listing.

(Tr. 19).

The ALJ then addressed the effects of Geiser's obesity along with her other medical conditions in the course of evaluating her residual functional capacity, observing at the outset that: "Her current weight is 250 pounds but it has fluctuated a lot due to diabetes." (Tr. 20). As part of this RFC analysis, the ALJ's decision went on to provide a narrative discussion of Geiser's impairments and abilities through 2015 and 2016. This narrative specifically considered and discussed the relationship between these impairments, abilities, and Geiser's obesity, stating that:

In February 2015, the claimant was feeling okay but her low back pain had increased after recently being stranded on a mountain in a car for fourteen hours (Exhibit 9F, p. 50). Medications were being taken as prescribed. On physical examination, she was obese and joint tenderness was present but her gait was normal. At the time, her height was 64 inches, weight 282 pounds, and body mass index 48.50. A body mass index greater than 30.0 indicates obesity according to the medical criteria set forth by the National Institute of Health (NIH Publication No. 98-4083, p. xiv, September 1998). Physical therapy was started at this time, which was greatly helping her back (Exhibit 4F, p. 76). Three months later, her medical problems included uncontrolled diabetes mellitus without complication and morbid obesity (Id. at 163)[.]

The claimant appeared very strong in August 2015 but she was using a gripper to pick things up on the floor (Exhibit 4F, p. 68). Tenderness and abnormal range of motion were still present but muscle strength and gait were normal on examination. Physical therapy and pain medication were to continue. She reported her back was not any better

a month later. Back pain with associated symptoms, including fatigue, continued throughout the rest of 2015 but her gait remained normal (Id. at 59). The claimant was on diabetic insulin and using pain medication in February 2016 (Id. at 55). A month later, her blood sugar glucose was increased so insulin dosage was increased (Id. at 52). She was working again as a part time cleaner. Physical examinations continued to find her obese.

(Tr. 21).

Thus, the decision provided a medical narrative which compared and contrasted Geiser's abilities and impairments, while also expressly addressing her on-going obesity.

Following this adverse administrative ruling, Geiser filed an appeal with this court. (Doc. 1). On appeal, Geiser brings a specific, focused claim, arguing in particular that the ALJ erred by failing to give meaningful consideration to her obesity in evaluating this claim. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, under the deferential standard of review that applies to this case, the ALJ's decision will be affirmed.

### III.   <u>Discussion</u>

#### A.   <u>Substantial Evidence Review – The Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. <u>See</u> 42 U.S.C. § 405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200

(3d Cir. 2008); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

Substantial evidence "does not mean a large or considerable amount of evidence, but

rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial

evidence is less than a preponderance of the evidence but more than a mere scintilla.

Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir.

1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n,

383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this Court, therefore, is not whether the claimant is

disabled, but rather whether the Commissioner's finding that he is not disabled is

supported by substantial evidence and was reached based upon a correct application

of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205,

at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote

a lack of substantial evidence") (alterations omitted); <u>Burton v. Schweiker</u>, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); <u>see also</u> <u>Wright v. Sullivan</u>, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); <u>Ficca</u>, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 611 (3d Cir. 2014) (citing <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." <u>Burnett v. Comm'r of Soc. Sec.</u>, 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements ... are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. <u>Id.</u> at 120; <u>see</u> <u>Jones v. Barnhart</u>, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ

> particular "magic" words: "<u>Burnett</u> does not require the ALJ to use
> particular language or adhere to a particular format in conducting his
> analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### B.   Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §§ 404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed

to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents

him or her in engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience, and RFC. 20 C.F.R. §416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999). Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference,

particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' <u>Walters v. Commissioner of Social Sec.</u>, 127 F.3d 525, 531 (6th Cir.1997); <u>see also</u> <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 801 (10th Cir. 1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." <u>Frazier v. Apfel</u>, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000). Furthermore, in determining if the ALJ's decision is supported by substantial evidence, the court may not parse the record but rather must scrutinize the record as a whole. <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981).

### C. <u>Legal Benchmarks for Analysis of Obesity Claims in Social Security Appeals</u>

The interplay between this deferential substantive standard of review, and the requirement that courts carefully assess whether an ALJ has met the standards of articulation required by law, is aptly illustrated by those cases which consider analysis of the compounding effect of obesity upon disability claimants. In this regard, the leading case addressing this issue is <u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500 (3d Cir. 2009). In <u>Diaz</u>, an ALJ found at Step 2 of the analytical process that Diaz's obesity was a severe impairment, but then neglected to address the exacerbating effect of this condition at Step 3 or in any other subsequent steps in the disability analysis.

On these facts, the Court of Appeals remanded the case for further consideration by the Commissioner and provided guidance regarding the duty of articulation required from ALJs in this setting. Thus, the Court of Appeals explained that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." Diaz, 577 F.3d at 504. While imposing this responsibility of articulation upon ALJs, the appellate court did not endeavor to impose some strict formulaic requirements upon these administrative adjudicators. Quite the contrary, the court made it clear that: "The ALJ, of course, need not employ particular 'magic' words: '[Case law] does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.' " Diaz, 577 F.3d at 504 (citations omitted).

The Court of Appeals also made it abundantly clear that its decision related to the ALJ's duty to adequately articulate the rationale underlying any decision denying benefits and did not in any way alter the very deferential substantive standard of review in these cases. As the Court noted: "Were there *any* discussion of the combined effect of [obesity upon] Diaz's impairments, we might agree with the District Court [and affirm the ALJ decision]. However, absent analysis of the cumulative impact of Diaz's obesity and other impairments on her functional capabilities, we are at a loss in our reviewing function." Diaz, 577 F.3d at 504

(emphasis in original). By noting that "*any* discussion of the combined effect of [obesity upon] Diaz's impairments," would have been sufficient, the appellate court underscored the continuing vitality of the deferential standard of review that applies in these cases.

Thus, fairly construed, <u>Diaz</u> holds that where an ALJ has defined a claimant's obesity as a severe impairment at Step 2 of this analysis, there is a basic duty of articulation that is owed the claimant, explaining how that obesity affects the issue of disability. However, once that duty of articulation is met, the substantive standard of review remains highly deferential. Applying this analytical paradigm, following <u>Diaz</u> it has been held that a single cursory assurance that an ALJ has considered a claimant's obesity may be insufficient to satisfy the requirement that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." <u>Diaz</u>, 577 F.3d at 504; <u>see also</u> <u>Sutherland v. Berryhill</u>, No. 3:17-CV-00124, 2018 WL 2187795, at *9 (M.D. Pa. Mar. 6, 2018), <u>report and recommendation adopted sub nom.</u> <u>Sutherland v. Berryhill</u>, No. CV 3:17-0124, 2018 WL 2183359 (M.D. Pa. May 11, 2018). However, a statement by an ALJ in a decision denying benefits that the ALJ has "considered any additional and cumulative effects of obesity," when coupled with even a brief factual analysis of the medical evidence as it relates to obesity and impairment, is sufficient to satisfy

this duty of articulation. <u>Cooper v. Comm'r of Soc. Sec.</u>, 563 F. App'x 904, 911 (3d Cir. 2014). Further, when an ALJ considers the role of a claimant's obesity, evaluating it within the context of the overall record, consistent with the appropriate guidelines, this duty is satisfied. <u>Woodson v. Comm'r Soc. Sec.</u>, 661 F. App'x 762, 765 (3d Cir. 2016). Finally, this responsibility is met when the ALJ explicitly considers the claimant's obesity when assessing that claimant's residual functional capacity. <u>Hoyman v. Colvin</u>, 606 F. App'x 678, 680 (3d Cir. 2015); <u>Medina v. Berryhill</u>, No. 3:17-CV-1941, 2018 WL 3433290, at *6–7 (M.D. Pa. June 8, 2018), <u>report and recommendation adopted</u>, No. CV 3:17-1941, 2018 WL 3426408 (M.D. Pa. July 16, 2018).

## D. <u>Substantial Evidence Supports the ALJ's Findings in this Case.</u>

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988). Judged against these deferential standards of review, we find that substantial evidence supported the decision by the

ALJ that Ms. Geiser could perform light work and was not disabled. On this score, Geiser argues that the ALJ did not sufficiently consider her obesity when making this disability determination. However, in reaching this decision, the ALJ found Geiser's obesity to be a severe impairment at Step 2 and then expressly considered her obesity in making the Step 3 determination in this case.

The ALJ's decision then discussed Geiser's obesity, along with her other impairments and reported capabilities, when arriving at a residual functional capacity assessment for the plaintiff. This discussion noted that:

> In February 2015, the claimant was feeling okay but her low back pain had increased after recently being stranded on a mountain in a car for fourteen hours (Exhibit 9F. p. 50). Medications were being taken as prescribed. On physical examination, she was obese and joint tenderness was present but her gait was normal. At the time, her height was 64 inches, weight 282 pounds, and body mass index 48.50. A body mass index greater than 30.0 indicates obesity according to the medical criteria set forth by the National Institute of Health (NIH Publication No. 98-4083, p. xiv, September 1998). Physical therapy was started at this time, which was greatly helping her back (Exhibit 4F, p. 76). Three months later, her medical problems included uncontrolled diabetes mellitus without complication and morbid obesity (Id. at 163)[.]

> The claimant appeared very strong in August 2015 but she was using a gripper to pick things up on the floor (Exhibit 4F, p. 68). Tenderness and abnormal range of motion were still present but muscle strength and gait were normal on examination. Physical therapy and pain medication were to continue. She reported her back was not any better a month later. Back pain with associated symptoms, including fatigue, continued throughout the rest of 2015 but her gait remained normal (Id. at 59). The claimant was on diabetic insulin and using pain medication in February 2016 (Id. at 55). A month later, her blood sugar glucose was increased so insulin dosage was increased (Id. at 52). She was

working again as a part time cleaner. Physical examinations continued
to find her obese.

(Tr. 21).

Thus, this is not a case like <u>Diaz</u>, where an ALJ identified the claimant's
obesity as a severe impairment but then neglected to address that condition in any
meaningful way. Instead, the ALJ's decision in Geiser's case "considered [the]
additional and cumulative effects of obesity," when the ALJ conducted a factual
analysis of the medical evidence as it related to her obesity and impairments. <u>Cooper</u>
<u>v. Comm'r of Soc. Sec.</u>, 563 F. App'x 904, 911 (3d Cir. 2014). Further, the ALJ's
decision, read as a whole, examined the role of a Geiser's obesity, evaluating it
within the context of the overall record. <u>Woodson v. Comm'r Soc. Sec.</u>, 661 F.
App'x 762, 765 (3d Cir. 2016). Moreover, the ALJ explicitly stated that she
considered Geiser's obesity when assessing her residual functional capacity.
<u>Hoyman v. Colvin</u>, 606 F. App'x 678, 680 (3d Cir. 2015). <u>Medina v. Berryhill</u>, No.
3:17-CV-1941, 2018 WL 3433290, at *6–7 (M.D. Pa. June 8, 2018), <u>report and</u>
<u>recommendation adopted</u>, No. CV 3:17-1941, 2018 WL 3426408 (M.D. Pa. July 16,
2018). This is all that Geiser can demand of an ALJ in this setting, and since
substantial evidence supports the ALJ's evaluation of this medical evidence and the
effects of Geiser's obesity on her other impairments, this claim does not warrant a
remand of this case.

In sum, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant like Geiser can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence could have been further explained, or might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.' " <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case. Therefore, we will affirm this decision, direct that judgment be entered in favor of the defendant, and instruct the clerk to close this case.

## IV.   <u>Conclusion</u>

Accordingly, for the foregoing reasons, IT IS ORDERED that the final decision of the Commissioner denying these claims is AFFRIMED.

An appropriate order follows.

Submitted this 15th day of June 2020.


*/S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge